IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONICA LAMB<br>769 N. Charlotte Street<br>Pottstown, PA 19464<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PRECISION POLYMER PRODUCTS, INC.<br>815 South Street<br>Pottstown, PA 19464<br><br>　　　　　Defendant. | CIVIL ACTION NO. _____<br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

## COMPLAINT – CIVIL ACTION

Plaintiff, Monica Lamb ("Plaintiff"), by and through her undersigned attorney, for her Complaint against the Precision Polymer Products, Inc. ("Defendant"), alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff initiates this action contending that Defendant interfered with and violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, Pennsylvania common law, and ultimately terminated her employment in retaliation for her attempts to exercise those rights in violation of the same. As a result, Plaintiff has suffered damages as set forth herein.

### PARTIES

2. Plaintiff is a citizen of the United States and Pennsylvania and currently maintains a residence located at 769 N. Charlotte Street, Pottstown, PA 19464.

3. Defendant Precision Polymer Products, Inc. is a Pennsylvania corporation with a principal place of business located at 815 South Street, Pottstown, PA 19464.

## JURISDICTION AND VENUE

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about May 24, 2017, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 29 U.S.C. § 621, *et seq*. Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2017-02731. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

6. By correspondence dated December 11, 2017, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

9. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant resides in this judicial district, doing business therein.

## FACTUAL BACKGROUND

10. Paragraphs 1 through 9 are hereby incorporated by reference as though the same were fully set forth at length herein.

11. In or around August 2011, Defendant hired Plaintiff to work as a Quality Inspector.

12. Throughout the duration of her employment, Plaintiff performed her job well, receiving no significant discipline, positive reviews, and occasional praise for her work.

13. At all times relevant hereto, Defendant was engaged in an industry affecting interstate commerce and had fifty (50) or more employees in twenty (20) or more workweeks in the current or proceeding calendar year.

14. At all times relevant hereto, Defendant employed fifty (50) or more employees at or within seventy-five (75) miles of Plaintiff's worksite with Defendant.

15. Plaintiff worked at least twelve hundred and fifty (1,250) hours for Defendant during the twelve (12) month period immediately preceding her entitlement to protected medical leave.

## ADA/TITLE VII DISCRIMINATION AND RETALIATION ALLEGATIONS

16. Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17. On or about October 24, 2016, Plaintiff suffered an injury to her left hand from lifting several heavy totes of medical products while working for Defendant.

18. Specifically, in lifting one such tote, Plaintiff's left wrist twisted and became hot, tingly, and sore.

19. Plaintiff reported her injury to Richard Verdine ("Mr. Verdine"), shortly after it occurred.

20. On or about October 26, 2016, Plaintiff saw Defendant's workers' compensation physician at Occupational Health-CarePlex, who diagnosed her with flexor tenosynovitis in her

left wrist, a disability within the meaning of the ADA in that it substantially impaired Plaintiff's ability to perform major life activities for an extended period of time.

21. As a result of her injury, the physician informed Plaintiff she likely suffered nerve damage and would need to attend occupational therapy several times a week.

22. The physician at Occupational Health-CarePlex released Plaintiff to return to work on light duty.

23. Plaintiff provided Defendant with her return to work notice from Occupational Health-CarePlex, which included requests that Plaintiff refrain from lifting more than ten (10) pounds, pushing or pulling more than ten (10) pounds, and not engaging in any vigorous grasping until further notice.

24. That same day, on or about October 26, 2017, Plaintiff disclosed to her team lead, Carol Richie ("Ms. Richie"), that she was pregnant and due to give birth on or about April 16, 2017.

25. Plaintiff believed she needed to inform Ms. Richie she was pregnant because, in light of her pregnancy, she was unable to take any of the medications recommended by Occupational Health-CarePlex to ease the pain of the injury to her left wrist.

26. Immediately following her disclosure, Ms. Richie remarked to Plaintiff, "You don't need any more children."

27. Ms. Richie also complained audibly on numerous occasions following Plaintiff's disclosure that she was displeased with the frequency with which Plaintiff took bathroom breaks.

28. Soon thereafter, it became apparent that Plaintiff's manager, Cliff Erlich ("Mr. Erlich"), was also looking for excuses to write her up.

29. Mr. Erlich continually wrote Plaintiff up for conduct that, prior to her injury and subsequent disclosure of her pregnancy, never resulted in any disciplinary actions.

30. For example, Mr. Erlich would write Plaintiff up for "taking excessive breaks" and "abandoning her station" although he was aware she was merely using the restroom or adjusting her wrist splint.

31. Furthermore, other employees who did not suffer from a disability, and were not pregnant, in the same or similar position to Plaintiff were not disciplined for engaging in the same type of conduct.

32. Initially, Defendant honored the light duty restrictions provided to Plaintiff by Occupational Health-CarePlex. However, a few weeks after her injury, Defendant placed Plaintiff back at her previous work station, forcing her to lift, grasp, and move totes again.

33. Upon information and belief, Plaintiff complained to Defendant's Human Resources ("HR") department, specifically Richard Molinaro ("Mr. Molinaro"), that Defendant was not honoring the restrictions put into place by its own workers' compensation physician.

34. Additionally, upon information and belief, Plaintiff also filed a complaint with Mr. Molinaro against Mr. Erlich.

35. Specifically, Plaintiff expressed her belief that Mr. Erlich was targeting her with petty disciplinary action because she was pregnant.

36. Upon information and belief, Defendant took no corrective or remedial action in response to Plaintiff's complaints.

37. On or about November 29, 2016, Plaintiff was terminated for "excessive latenesses and absenteeism."

38. Many instances cited to in Plaintiff's termination were occasions on which Plaintiff requested to leave work in order to care for her autistic son or the injury to her left wrist.

39. In light of the foregoing, it is believed and therefore averred that Defendant's suggested reason for her termination was pretextual, and that Plaintiff was actually terminated on the basis of her pregnancy, disabilities and/or record of impairment, such disabilities that Defendant regarded her as having, and in retaliation for her requests for accommodations in connection with her disabilities, in violation of Title VII and the ADA.

## FMLA INTERFERENCE AND RETALIATION ALLEGATIONS

40. Paragraphs 1 through 39 are hereby incorporated by reference as though the same were fully set forth at length herein.

41. In or around early 2013, Plaintiff informed Defendant her son suffered from autism, asperger's syndrome, and ADHD.

42. Plaintiff also informed Defendant that, as a result of her son's conditions, he would need to be place in a preschool intervention program with other children with similar conditions.

43. Upon information and belief, Plaintiff's son's conditions cause him to have episodes or outbursts, which he has trouble controlling and calming down from by himself.

44. As a result, Plaintiff informed Mr. Molinaro she may need to take one (1) to two (2) hours of leave every couple of weeks in order to travel to and from her son's school in order to calm him down if he had an episode.

45. At no point following her request for leave to care for her son's serious health condition did Mr. Molinaro inform Plaintiff of her rights under the FMLA or suggest she take the job protected leave afforded to her under the FMLA.

46. Each time Plaintiff would need to leave work early or come into work late as a result of her son's medical condition, she would call and speak with Mr. Molinaro, who would make a note as to why she was tardy or leaving early.

47. Even after Plaintiff's repeated conversations with Mr. Molinaro and other members of management regarding her need for time off to care for her son, no one informed Plaintiff of her ability to take FMLA leave to care for her son's serious health condition, but instead continued to count these "latenesses" and "absences" against Plaintiff.

48. In fact, on or about November 29, 2016, Plaintiff was terminated for "excessive latenesses and absenteeism."

49. Many of instances cited to in Plaintiff's termination letter were occasions on which Plaintiff requested to leave work in order to care for her autistic son.

50. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

### COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000(e) *et seq.*
### PREGNANCY DISCRIMINATION AND RETALIATION

51. Paragraphs 1 through 50 are hereby incorporated by reference as though the same were fully set forth at length herein.

52. Defendant employed at least fifteen (15) employees throughout its various locations at all times material hereto.

53. Defendant violated Title VII in that Defendant unlawfully and illegally discriminated against Plaintiff on account of her pregnancy and her requests for an accommodation in connection thereto.

54. Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

55. Because of Defendant's unlawful acts, Plaintiff has suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Liquidated damages;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d) Any verdict in favor of Plaintiff is to be molded by this Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101 *et. seq.*
## DISCRIMINATION, RETALIATION, AND FAILURE TO ACCOMMODATE

56. Paragraphs 1 through 55 are hereby incorporated by reference as though the same were more fully set forth at length herein.

57. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act of 1990.

58. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

59. Plaintiff's flexor tenosynovitis in her left wrist limited her ability to engage in major life activities, including lifting, pushing, pulling, grasping, and caring for herself.

60. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

61. Plaintiff's request to be placed on light duty for the above-mentioned condition constituted a request for a reasonable accommodation.

62. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees has violated the ADA by terminating Plaintiff's employment because of her actual and/or perceived disabilities and request for a reasonable accommodation in connection thereto.

63. It is further alleged that, by reasons of the foregoing, Defendant unlawfully failed to provide reasonable accommodations for Plaintiff's disabilities.

64. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances;

f) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable federal law.

## COUNT III
## FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601, *et seq.*
## INTERFERENCE AND RETALIATION

65. Paragraphs 1 through 64 are hereby incorporated by reference as though the same were fully set forth at length herein.

66. Defendant is a "covered employer" within the meaning of the FMLA.

67. Plaintiff was an "eligible employee" under the FMLA and was entitled to twelve (12) weeks of protected, unpaid leave to care for her pregnancy-related disability.

68. Defendant violated the FMLA by: (a) using Plaintiff's taking of leave for FMLA-qualifying reasons as a negative factor in its decision to terminate Plaintiff's employment, (b) by terminating Plaintiff because of her FMLA-qualifying leave request; and (c) by terminating Plaintiff for taking FMLA-qualifying leave and/or in retaliation for attempting to exercise her rights under the FMLA.

69. The aforementioned actions constitute both interference and retaliation violations of the FMLA.

70. Plaintiff has, because of Defendant's wrongful termination of her employment, been unable to obtain other employment, has suffered significant wage losses and loss of potential bonuses.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Liquidated damages;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d) Any verdict in favor of Plaintiff is to be molded by this Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

## COUNT IV
## PENNSYLVANIA WORKER'S COMPENSATION ACT/
## WRONGFUL DISCHARGE UNDER PENNSYLVANIA COMMON LAW
## 77 P.S. § 1-1031 *et seq.*
## RETALIATION

71. Paragraphs 1 through 70 are hereby incorporated by reference as though the same were more fully set forth at length herein.

72. At all times relevant hereto, Defendant was subject to the provisions of the PWCA.

73. Plaintiff suffered a work-related injury and requested workers' compensation benefits connected thereto.

74. As a result of Plaintiff's workplace injuries set forth above, Plaintiff filed a petition for worker's compensation benefits against Defendants.

75. The PWCA, in pertinent part, prohibits an employer from taking any adverse employment action against an employee in retaliation for that employee exercising her right to file a petition for worker's compensation benefits thereunder.

76. It is believed and therefore averred that Defendant unlawfully violated Pennsylvania's Worker's Compensation Law and/or the public policy exception to Pennsylvania's common law tradition of at-will employment by unlawfully and retaliatory terminating Plaintiff's employment because of Plaintiff's claim for benefits under Pennsylvania's Worker's Compensation Law.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, loss of fringe benefits, and raises in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Compensatory, exemplary, and/or punitive damages;

c) Pre-judgment interest in an appropriate amount; and

d) Such other and further relief as is just and equitable under the circumstances;

e) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issue so triable.

                        Respectfully submitted,

                        **MURPHY LAW GROUP, LLC**

By: _____
      Michael Murphy, Esq.
      Eight Penn Center, Suite 2000
      1628 John F. Kennedy Blvd.
      Philadelphia, PA 19103
      TEL: 267-273-1054
      FAX: 215-525-0210
      murphy@phillyemploymentlawyer.com
      Attorney for Plaintiff

Dated: February 2, 2018

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to the same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.